STATE OF NEW HAMPSHIRE

STRAFFORD, SS.                                                                                      SUPERIOR COURT

Susan Hanson
4 Melody Terrace, Dover NH 03820

v.

Wentworth-Douglass Hospital
Principal Address:  789 Central Avenue, Dover NH 03820
Mailing Address:  PO Box 609, Dover NH 03821

Docket No. _____

## COMPLAINT

NOW COMES, Plaintiff, Susan Hanson, by and through her attorneys, Law Office of Leslie H. Johnson, PLLC, and Vanacore Law Office, LLC, and complains against, Wentworth-Douglass Hospital, Defendant, and in support thereof states as follows:

### INTRODUCTION AND DEMAND FOR JURY TRIAL

1.  Plaintiff brings this action pursuant to the statutory and common laws of the State of New Hampshire and the United States, particularly the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., as amended (ADAAA) (hereinafter "ADA"), for disability discrimination/hostile environment, failure to accommodate, and retaliatory termination, and violation of the Family Medical Leave Act, 29 U.S.C. §§ 2601 et seq., including retaliation. Plaintiff seeks to recover all damages as allowed by law. Plaintiff requests a jury trial for all matters raised herein.

### VENUE

2.  Venue is proper as Plaintiff worked for Defendant in Dover, New Hampshire, and the unlawful employment acts complained of were committed in Dover, Strafford County, New Hampshire.

## PARTIES

3.      Susan Hanson (hereinafter, "Plaintiff"), a resident of Dover, New Hampshire, was employed by Wentworth-Douglass Hospital, from June 17, 2008 until the date of her termination on December 22, 2014. During the past years of her employment Plaintiff worked at least 1250 hours per year.

4.      Defendant, Wentworth-Douglass Hospital, (hereinafter, "Defendant") was, at all times relevant to this action, a non-profit business incorporated under the laws of the State of New Hampshire and located in the City of Dover, County of Strafford, State of New Hampshire. Service of this Complaint against Defendant is being made upon Gregory Walker, President, c/o Wentworth-Douglass Hospital, 789 Central Avenue, Dover, NH 03820; and Roger Hamel, Chairman of the Board of Directors, c/o Wentworth-Douglass Hospital, 789 Central Avenue, Dover, NH 0382.

5.      Defendant is an employer and covered entity for purposes of the ADA, and the FMLA, as it has over one hundred (100) employees.

## GENERAL ALLEGATIONS

6.      Plaintiff filed a Charge of Discrimination, #16D-2015-00158, on or about June 19, 2015 with the New Hampshire Commission for Human Rights, within 180 days of the last discriminatory act.  A Notice of Right to Sue was requested from the EEOC, which was issued on October 17, 2017, and this suit is filed within 90 days.

7.      Plaintiff was employed by the Defendant as a Surgical Technologist, starting on June 18, 2008.  She was terminated on December 22, 2014. Her job duties included setting up and maintaining the sterile field for operating room (OR) surgical procedures; passing surgical instruments to the surgeons; maintaining sterile fluids and medications during surgery; keeping sponge, needle and instrument counts; performing retracting, suctioning and other surgical

procedures; preserving surgical specimens, and; being knowledgeable with regard to surgical procedures, and each surgeon's procedural preferences.

8. Plaintiff was qualified for the job she was performing, and she was performing it well, receiving reviews in the years 2011, 2012, 2013 and 2014, in which she either met or exceeded expectations.

9. Plaintiff was usually able to perform her job without reasonable accommodation, however, when she was distracted by other work duties, had a tendency to miss, or be slightly late in punching in or out for lunch periods, at which times an accommodation was required.

10. In 2011, Plaintiff was diagnosed with attention deficit hyperactivity disorder (ADHD), a medical condition which substantially limited her in major life activities, including keeping to schedules without frequent reminders, and difficulty in paying attention to detail, but also an enhanced ability to pay attention to details when dealing with important tasks. Plaintiff's ADHD interfered with her ability to work, concentrate, and causes her to be absent minded about ancillary tasks. Plaintiff treated said condition with medication and other medical attention.

11. After being diagnosed with ADHD, the Plaintiff informed some of her supervisors and co-workers of her condition. The fact that she had ADHD and took medication for the condition was generally known by OR employees.

12. The Defendant's assistant vice president of surgical and outpatient services, Chris Hamill, who fired the Plaintiff, was aware of Plaintiff's ADHD condition and her use of medication to assist her in dealing with her condition.

13. Throughout the more than 6 years of the Plaintiff's employment, the Defendant hospital required that the OR staff punch in and out using a timekeeping clock, upon arrival at the start of their shifts, upon leaving for and returning from breaks, including mealtime breaks,

and then leaving at the end of their shift.

14. From early on in her employment with the Defendant, as a result of her ADHD, the Plaintiff frequently failed to punch in and out.

15. Prior to 2014 the requirement for punching in and out was not strictly enforced in the Defendant's OR. The payroll manager at that time would chase down OR staff that failed to punch in or out and have them sign an exception sheet.

16. Around 2014, following management changes at the hospital, the requirement of punching in and out was more strictly enforced in the Defendants' OR.

17. The job of payroll management was assigned to the Plaintiff's nurse manager, Timothy Nesmith, who strictly enforced the Defendant's hospital rules on time keeping, absences and tardiness.

18. Plaintiff informed her supervisor, Nesmith, that she at times struggled with focus and attention as a result of her disability, specifically that it could make her absent-minded in timely clocking in and out.

19. The response Plaintiff received from her supervisors was to "try harder". Subsequently supervisors and co-workers would frequently ask her if she had taken "her meds today", which she believed was harassment based on her disability.

20. The Defendant's policy on absences purportedly allowed for no more than five absences during a rolling 12-month period, including absences for sickness.

21. Due almost exclusively to circumstances beyond her control (i.e. children's illnesses and asthma), during the 12 month period prior to April 28, 2014, the Plaintiff was absent up to five occasions. As a result, on April 28, 2014, she was issued a Level I Warning under the hospital's disciplinary rules for attendance issues.

22. Similarly, on October 20, 2014, the Plaintiff was issued a Level II Warning for continued absence issues.

23. Around late October or early November of 2014 Plaintiff met with Tim Nesmith to discuss options regarding FMLA. Nurse Nesmith directed her to Henderson in HR.

24. On or about November 18, 2014, Plaintiff inquired with Henderson, in Human Resources, about applying for FMLA for her daughter's health condition, which is a disability, anticipating she may need to take some time to deal with her health issues. Henderson asked Plaintiff if it was a chronic issue, and she replied yes, that her daughter had severe asthma.

25. Instead, HR discouraged her from filing regarding her daughter's condition, but promised to send her the paperwork. However, when HR sent the paperwork on or about November 21, 2014, which Plaintiff received shortly thereafter, it was only for Plaintiff's own health condition/disability. As she had not requested FMLA paperwork for her own disability, she did not fill it out. Plaintiff's understanding was that she was not allowed to file for FMLA regarding her daughter.

26. On November 24, 2014 the Defendant issued a Level II - Improvement Document Extension which added the issues of missed punches and extended breaks to the October 20, 2014 Level II Warning.

27. Plaintiff's supervisors never offered to provide her with an accommodation regarding the punching in and out, nor entered into the interactive process. However, on or about October and November 2014, Plaintiff spoke with her supervisor (Nesmith) asking if she could use the exception sheet (as an accommodation for her disability), for when she missed or was late punching in and out, but was told no, she could not. Plaintiff was denied this as an accommodation, even though others were allowed to use this process, and the policies allowed it.

28. On December 3, 2014 the Defendant issued the Plaintiff a Level III, Last and Final Warning for both attendance issues and the issue of failure to punch in and out.

29. Upon receipt of the Level III Warning, the Plaintiff took extra precautions to ensure that she punched in and out at all times, and in fact, she did not miss any time clock punches following the December 3, 2014 warning.

30. The Plaintiff called out sick on December 12 because her daughters were sick with flu-like symptoms, one whose illness was more serious due to her chronic asthma which was also affecting her health during that time period, and said condition/asthma would have been covered by the FMLA, had Plaintiff been allowed to apply for it to take care of her daughter when she had asthma

31. In addition, on December 18 and December 19, 2014 Plaintiff missed work because she herself had the flu and was vomiting, which constituted an infectious/communicable disease.

32. Plaintiff tried to call the flu hotline but it was not yet set up for the year. The purpose of the flu hotline is to keep sick employees out of work for the benefits of patients and staff, to avoid further spread of infectious disease.

33. It is a violation of the Defendant's hospital policy, as well as laws, rules and regulations, for an OR employee, or any other employee, to work at the Defendant hospital while contagious with influenza, or having been exposed to flu-like symptoms. For example, see RSA 141-C:1 and 7.

34. At the end of the Plaintiff's work shift on December 22, 2014, Chris Hamill, RN, MSN, CNL, NEA–BC, Assistant Vice President, Surgical and Outpatient Services at the Defendant hospital fired the Plaintiff, allegedly "based on continued violation of these company

policies (unscheduled absences on 12/12 and 12/18 – 19, and missed punches on 12/4, 12/9 & 12/17)".

35. Plaintiff asserts that her termination was wrongful because it was done on the basis of discrimination related to her disability, failure to accommodate, retaliation for asking for FMLA leave and applying for same, as well as for missing work for reasons supported by public policy.

36. Plaintiff did not have any more of the 5 allowed absences available, but she had some PTO, personal time off, that she had not used, and three absences from the previous year would be dropping off in January through March 2015.

37. Defendant knew, or should have known, that their actions described herein were illegal. Defendant's actions were contrary to the law and done knowingly, maliciously, with reckless indifference and were egregious and wanton, thus justifying an award of enhanced/liberal compensatory damages.

38. Plaintiff claims damages which are within the jurisdictional limits of this Court, including damages for punitive damages, liberal/enhanced compensatory damages, back pay, front pay, lost benefits, loss of future earning capacity, emotional distress, embarrassment, humiliation, aggravation, liquidated damages, damages to reputation, tax consequences, reasonable costs and attorneys' fees related to this action, and all other damages as allowed by law, all of which Plaintiff has suffered due to the discrimination/harassment by Defendant and its agents as set forth herein. Plaintiff also claims all equitable relief to which she may be entitled.

## COUNT I - WRONGFUL TERMINATION

39. Plaintiff incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein, and further states as follows:

40. It is Plaintiff's understanding that Defendant has a policy banning those with, or

believed to have, communicable diseases from entry and/or contact with patients.

41. State and/or Federal laws, rules, regulations, procedures, and/or licensing standards, govern issues concerning medical personnel and communicable diseases.

42. It is Plaintiff's understanding that hospitals are required by federal and state rules, and regulations to do everything within reason to protect the health and safety of their patients, including avoiding exposing them to infectious diseases.

43. Ms. Hanson's action of refraining from attending work while infected with and exposed to the influenza virus was an action which is supported and encouraged by public policies, rules, laws and regulations.

44. The action taken by the Defendant hospital by and through its employees and agents in disciplining the Plaintiff, including her dismissal from employment, were actions taken in response to, and in retaliation for, the Plaintiff's refusal to attend work in the Defendant's operating room because of the risk of harm to hospital patients, and the spreading of communicable/infectious illness and disease.

45. Defendant's actions, including firing Plaintiff, were motivated by bad faith, malice, and/or retaliation, and violated public policy. Defendant knew, or should have known, that their actions described herein were illegal, contrary to law. Defendant's actions were contrary to their own employee policies, contrary to the law and done in bad faith, knowingly, maliciously, with reckless indifference and were egregious and wanton, thus justifying an award of enhanced/liberal compensatory damages.

46. As a result of Defendant's actions, Plaintiff has been damaged. Plaintiff claims all damages as allowed by law, as set forth elsewhere herein, and all equitable relief to which she may be entitled.

### COUNT II - DISABILITY DISCRIMINATION/ FAILURE TO ACCOMMODATE AND RETALIATION INCLUDING TERMINATION
### ADA (42 U.S.C. § 12101 et seq.), AS AMENDED (ADAAA)

47. Plaintiff incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein, and further states as follows:

48. Once having been notified of the Plaintiff's qualified disability, the Defendant was obligated under federal law to provide reasonable accommodations, and to take all reasonable steps required under federal rules and guidance in order to assist the Plaintiff in being or becoming able to perform the essential functions of her job.

49. The Defendant failed to provide reasonable accommodations or to take any steps whatsoever in assisting the Plaintiff in being able to perform the essential functions of her job, and failed to enter into the interactive process, and denied her requested accommodation of using the exception sheet.

50. The Defendant's actions in disciplining the Plaintiff, including terminating her, for her alleged inability as a result of her qualified disability to comply with the Defendant's requirements of punching in and punching out on the Defendant's timekeeping system, constitutes a violation of the Americans with Disabilities Act.

51. Plaintiff continued to perform her job without the reasonable accommodations being granted, but then was terminated for allegedly missing punch-ins, which her accommodation would have covered.

52. Plaintiff expects to receive information during discovery, which may indicate that she was treated differently than others who missed work, or were slightly tardy punching in and out, which may indicate she was targeted and discriminated against because of her disability, and received disparate treatment.

53. Plaintiff was entitled to reasonable accommodations for her disability, as

described herein.

54. Defendant knew, or should have known, that its actions described herein were illegal. Defendant's actions were contrary to the ADA/ADAAA and done knowingly, maliciously, with reckless indifference, and were egregious and wanton, thus justifying an award of enhanced/liberal compensatory damages.

55. As a result of Defendant's actions, Plaintiff has been damaged. Plaintiff claims all damages as allowed by law, as set forth elsewhere herein, and all equitable relief to which she may be entitled.

### COUNT III - DISABILITY DISCRIMINATION/ HOSTILE WORK ENVIRONMENT AND TERMINATION
### ADA (42 U.S.C. § 12101 et seq.), AS AMENDED (ADAAA)

56. Plaintiff incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein, and further states as follows:

57. Plaintiff was treated in a discriminatory and hostile manner by Defendant due to her disability, including repeated sarcastic questioning by her supervisors as to whether she had taken her meds that day. This together with the other treatment related to her disability as described herein, including her termination, constitutes a hostile work environment based on her disability, which is contrary to the ADA/ADAAA.

58. Said hostile environment was severe and/or pervasive, such that no reasonable person would be expected to endure it.

59. As a result of Defendant's actions, Plaintiff has been damaged. Plaintiff claims all damages as allowed by law, as set forth elsewhere herein, and all equitable relief to which she may be entitled.

## COUNT IV - FAMILY MEDICAL LEAVE ACT (FMLA) VIOLATIONS

60. Plaintiff incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein, and further states as follows:

61. Plaintiff provided notice to the Defendant that she was suffering with serious health conditions;

62. Defendant retaliated against Plaintiff for exercising her rights under the FMLA when it terminated her employment;

63. Defendant's actions were done knowingly and willfully in violation of the FMLA, and the ADA; and

64. As a result of Defendant's actions, Plaintiff has been damaged. Plaintiff claims damages as allowed by law, as set forth elsewhere herein, and all equitable relief to which she may be entitled.

## COUNT V - BREACH OF CONTRACT

65. Plaintiff incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein, and further states as follows:

66. The Plaintiff's decision not to go to work while suffering from the influenza virus and while her daughters were suffering from flu-like symptoms on three occasions in December 2014, was compliant with the Defendant's hospital policy which required employees to stay home under such circumstances.

67. The Plaintiff's employment was terminated in part because of her failure to attend work on December 12, December 18, and December 19, 2014, while she was either inflicted with the influenza virus or exposed to flu-like symptoms.

68. The termination of the Plaintiff's employment by the Defendant in response to her compliance with the Defendant's policy forbidding attendance constitutes a breach of contract.

69.     As a result of Defendant's actions, Plaintiff has been damaged. Plaintiff claims all damages as allowed by law, as set forth elsewhere herein, and all equitable relief to which she may be entitled.

## COUNT VI - BREACH OF CONTRACT

70.     Plaintiff incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein, and further states as follows:

71.     The Plaintiff's employment was terminated at least in part because of her alleged failure to punch in and or out on the Defendant's time recording system on three occasions after receiving a Level III, Last and Final Warning.

72.     On each of the occasions when the Plaintiff was alleged to have failed to punch in and /or out following her receipt of the Level III, Last and Final Warning, the Plaintiff had in fact punched in and/or out.

73.     Implied in the employment rules and regulations of the Defendant is the right not to be terminated for this stated reason, if an employee has not acted in violation of terms of their Level III, Last and Final Warning.

74.     Had Defendant made a reasonable, or even cursory inquiry, regarding the alleged failures to punch in, they would have discovered the allegation to be false. Defendant knew, or should have known, that this allegation was false.

75.     Defendant's termination of the Plaintiff for her alleged failures to punch in and/or out following her receipt of a Level III Last and Final Warning constitutes a breach of her contract of employment, including its covenant of good faith and fair dealing.

76. As a result of Defendant's actions, Plaintiff has been damaged. Plaintiff claims all damages as allowed by law, as set forth elsewhere herein, and all equitable relief to which she may be entitled.

WHEREFORE, Plaintiff prays this Honorable Court order:

A. Back wages, together with lost fringe benefits and any other benefits, including increased retirement benefits, which Plaintiff would have earned;

B. Future wages, fringe benefits, loss of earning capacity, and other benefits;

C. Reasonable attorney fees, interest, and costs;

D. Enhanced/liberal compensatory damages;

E. Punitive damages;

F. Liquidated damages;

G. Reinstatement;

H. An amount to be awarded by the Court to make up for any adverse tax consequences due to any judgment or award;

I. All other damages as set forth herein, and/or as allowed by law; and

J. Such other and further relief as is just and equitable.

Respectfully Submitted,
SUSAN HANSON

By and through her attorneys,
Law Office of Leslie H. Johnson, PLLC, and
Vanacore Law Office, LLC

Dated: November 21, 2017

By: _____
**John G Vanacore, Esq. - #2611**
Vanacore Law Office, LLC
19 Washington Street
Concord, NH 03301
Ph: 603.228.1180
john@vanacorelaw.com

and

By: _____ (by John Vanacore)
**Leslie H. Johnson, Esquire - #5545**
Law Office of Leslie H. Johnson, PLLC
P.O. Box 265
Center Sandwich, NH 03227
Ph: 603.284.6600
leslie@lesliejohnsonlaw.com